McIlvaine, C. J.
It is undoubtedly a well established principle of law that a master who is guilty of no carelessness in. employing servants is not liable to one for injuries caused by the carelessness of a fellow-servant, while both are engaged in the common service, and no relation of subordination exists between them. In such case each servant assumes the risk of injuries from the carelessness of fellow-servants.
,It is also well settled that a person who without any employment voluntarily undertakes to perform service for *227 another, or to assist the servants of another in the service of the master, either at the request or without the request of such servants, who have no authority to employ other servants, stands in the relation of a servant for the time being, and is to be regarded as assuming all the risks incident to the business.
But it does not follow that under all circumstances a person who assists the servants of another in the discharge of their duties, without employment by the master, is to be regarded as voluntarily assuming the relation of a fellow-servant, or the risks pertaining to that relation. To illustrate; suppose a servant in driving his master’s team on the highway founders in such a manner as to prevent the use of the highway by others for the time being. Another person, who is thus impeded in the use of the road, assists the servant, either with or without request, to remove the impediments to travel from the highway. Such other person does not thereby become the fellow-servant of the driver. Indeed, in no just sense, has he voluntarily entered the service of the master. And the rule of law first above stated does not apply to the case supposed, and therefore it, was not error in the court of common pleas to refuse it.
The law of the case was properly given in the charge.
The plaintiff in the court of common pleas was not a mere volunteer, within the meaning of the rule of law contended for by plaintiff in error, but, as a passenger on the north-bound car, -was interested in having it driven to its destination. To this end it was necessary to pass the southbound car. This could only be accomplished by pushing-the north-bound car back upon the siding. In doing this, although it may not have been absolutely necessary for the passeuger to assist the driver, it was a prudent and reasonable act, justified by the circumstances of the case; not a wrongful interference and intermeddling with business in which he had no concern. It. was not, in fact or in law, an assumption of risk from the carelessness of the defendant or any of its servants.
*228 The law in this case is well stated in Wright v. The London and N. W. R. R. Co., 1 Q. B. Div. 252.
That case was this: “The plaintiff sent a heifer (which was put into a horse-box) by defendants’ railway to their P. station. On the arrival of the train at the station, there being only two porters available to shunt the horse-box to the siding, from which aloue the heifer could be delivered to the plaintiff, iu order to save delay he assisted in shunting the horse-box, and while he was so assisting he was run against and injured through a train being negligently allowed by the defendants’ servants to come out of the siding. There was evidence that the station-master knew that the plaintiff' was assisting iu the shunting, and assented to his doing so: Held, affirming the decision of the queen’s bench, that the plaintiff was not a mere volunteer assisting the defendants’ servants, but was on the defendant’s premises, with their consent, for the purpose of expediting the delivery of his own goods; and the defendants were therefore liable to him for the negligence of their servants, according to the principle of Holmes v. North Eastern Ry. Co., L. R. 4 Ex. 254; 6 Ex. 123.”

Judgment affirmed.